IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 1:11cv1135 |
| LISA FRYE, MARCUS HOLT, and John Doe, Minor, by and through his Guardian Ad Litem, Mitzi Cartrette, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the court on the parties' cross-motions for summary judgment. (Docket Entries 32, 34.) All motions have been fully briefed and the issues are ripe for disposition. For the reasons that follow, the court will recommend that Plaintiff's motion for summary judgment be granted and that Defendant John Doe's[1] motion for summary judgment be denied.

## I. STATEMENT OF THE CASE

This declaratory judgment action between Plaintiff Nationwide Mutual Fire Insurance ("Nationwide") and Defendant John Doe, Minor, by and through his Guardian Ad Litem, Mitzi Cartrette ("minor Defendant") arises out of a tort action filed in the Forsyth County Superior Court in 2011. Minor Defendant brought the underlying tort action against Lisa

---

[1] Defendant John Doe, a Minor by and through his Guardian Ad Litem, Mitzi Cartrette, is the only remaining Defendant in this matter. Default judgments against Defendants Lisa Frye and Marcus Holt were entered by the Court on August 9, 2012 and January 16, 2013, respectively. (*See* Docket Entries 21 and 25.)

Frye, Marcus Holt and Jennifer Hooker, none of whom are parties to this action, for injuries suffered by minor Defendant while being cared for by Holt in Frye's home. Jennifer Hooker, the minor Defendant's mother, has since been dismissed from the state court action, as has Lisa Frye. Additionally, the parties have executed a stipulation in which they agree that the outcome of this action will be dispositive as to Holt's liability in the tort action. (*See* Def.'s Br. Supp. Summ. J., Ex. G, Docket Entry 33-7.)

Nationwide – which provided homeowner's insurance ("the Policy") to Lisa Frye – filed this action for declaratory judgment in this court on December 23, 2011. (Docket Entry 1.) Nationwide seeks a declaration that it owes no duty under the Policy to indemnify Holt or to pay any damages sought against Holt by minor Defendant for injuries suffered during the incident in Frye's home. On April 1, 2013, minor Defendant and Nationwide each filed motions for summary judgment. (Docket Entries 32, 34.)

## II. STATEMENT OF FACTS

### A. Facts of Underlying Lawsuit

This matter arises out of an incident that occurred on September 29, 2008, at the Winston-Salem home owned by Lisa Frye. The residence was insured by a homeowner's policy issued by Nationwide. Frye is the sole named insured on the Policy. On the date in question, the following people were living in the residence: Lisa Frye (Homeowner), Marcus Holt, minor Defendant, and minor Defendant's mother, Jennifer Hooker. Holt was the boyfriend of Frye's 17 year-old daughter, Jade. Jade primarily lived with her father but spent at least one or two nights a week at her mother's home. Hooker was a friend of Jade's.

The complaint in the tort action alleges that:

> 8. On September 29, 2008, defendant Hooker went to work, leaving minor plaintiff in the care of defendant Holt. On that date, minor plaintiff suffered severe traumatic brain injury while defendant Holt was caring for him. Upon information and belief defendant Holt negligently and/or carelessly failed to properly supervise, care for, and protect minor plaintiff so as to prevent the aforementioned injuries. In the alternative, upon information and belief, defendant Holt negligently, carelessly and/or recklessly caused the aforementioned injuries by using physical force to discipline minor plaintiff, or negligently, carelessly and/or recklessly tossed minor plaintiff onto a couch.

(Am. Tort Compl. at 2, Docket Entry 1-1.) After an investigation by the Winston-Salem Police Department, Holt was arrested on a charge of felony child abuse, in violation of N.C. Gen. Stat. § 14-318.4(a3) for intentionally inflicting serious bodily harm on a child. Following a jury trial, Holt was found not guilty of the felony charge.

### B. The Insurance Policy

Nationwide issued to Frye a homeowner liability policy, number 61 32 HO 510722, with an effective period of April 04, 2008 to April 4, 2009. The Policy provides that Nationwide will "pay up to our limit of liability for the damages for which an insured is legally liable." (Policy, Part I, Docket Entry 1-2 at 30.) The Policy defines "insured," in relevant part, as follows:

> 5. "Insured" means:
>
>> You and residents of your household who are:
>> (1) Your relatives; or
>> (2) Other persons under the age of 21 and in the care of any person named above . . .

(*Id.* at 9.) The named insured listed on the Policy Declarations page is "Lisa B. Frye Jr." (*Id.* at 4.)

3

The Policy contains several relevant exclusions, including one for bodily injury caused by one insured against another insured ("Co-Insured Exclusion"), which bars coverage for:

**F. Coverage E – Personal Liability**

    6. Bodily injury to you or an insured as defined under Definitions 5.a or b.

(Policy Part II, Docket Entry 1-3 at 4.) Two other relevant exclusions are one for expected or intended injury and another for physical or mental abuse:

> E.     **Coverage E – Personal Liability and Coverage F – Medical Payments to Others**
>
>     **1. Expected or Intended Injury**
>
> > Bodily injury or property damage which is intended by or which may reasonably be expected to result from the intentional acts or omissions or criminal acts or omissions of one or more insured persons. This exclusion applies even if:
> >
> > a.     The insured persons lack the mental capacity to govern their own conduct;
> > b.     The bodily injury or property damage is of a different kind, quality or degree than intended or reasonably expected; or
> > c.     The bodily injury or property damage is sustained by a different person or entity than intended or reasonably expected.
>
> This exclusion applies regardless of whether or not an insured person is actually charged with, or convicted of, a crime.

(*Id.* at 24.)[2]

---

[2] This provision, which alters the standard expected or intended injury exclusions, is included in the North Carolina endorsement to the Policy.

4

> 7. **Sexual Molestation, Corporal Punishment or Physical or Mental Abuse**
>
>    Bodily injury or property damage arising out of sexual molestation, corporal punishment or physical or mental abuse[.]

(*Id.* at 3.)

## III. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A fact is considered "material" if it "might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate "in those cases in which it is perfectly clear that no genuine issue of material fact remains unresolved and inquiry into the facts is unnecessary to clarify the application of the law." *Haavistola v. Community Fire Co. of Rising Sun, Inc.*, 6 F.3d 211, 214 (4th Cir. 1993). When making the summary judgment determination, the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

As noted by at least one court, by submitting cross-motions for summary judgment, "the parties conceded that there is no question of material fact." *Erie Ins. Exch. v. St. Stephen's Episcopal Church*, 153 N.C. App. 709, 711, 570 S.E.2d 763, 765 (2002).

The meaning of language used in an insurance policy is a question of law for the court to determine. *Wachovia Bank & Trust Co. Westchester Fire Ins. Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970). "[A]s with all contracts, the goal of construction is to arrive at the intent of the parties when the policy was issued." *Woods v. Insurance Co.*, 295 N.C. 500, 505, 246, S.E.2d 773, 777 (1978). Thus, "where a policy defines a term, that definition is to be used." *C.D. Spangler Const. Co. v. Indus. Crankshaft & Eng'g Co., Inc.*, 326 N.C. 133, 142, 388 S.E.2d 557, 563 (1990) (quotations omitted). "[N]ontechnical words, not defined in the policy, are to be given the same meaning they usually receive in ordinary speech, unless the context requires otherwise." *Grant v. Insurance Co.*, 295 N.C. 39, 42, 243 S.E.2d 894, 897 (1978). As noted by North Carolina courts:

> In determining coverage issues, "[t]he interpretation of language used in an insurance policy is a question of law, governed by well-established rules of construction . . . . [T]he policy is subject to judicial construction only where the language used in the policy is ambiguous and reasonably susceptible to more than one interpretation. In such cases, the policy must be construed in favor of coverage and against the insurer; however, if the language of the policy is clear and unambiguous, the court must enforce the contract of insurance as it is written."

*Erie Ins. Exch.*, 153 N.C. App. at 711-12, 570 S.E.2d at 765 (alterations in original) (quoting *Allstate Ins. Co. v. Chatterton*, 135 N.C. App. 92, 94-95, 518 S.E.2d 814, 816 (1999)). An insured bears the burden of showing coverage, but where the insurer is relying on a clause that excludes coverage, the burden is on the insurer to establish that exclusion. *Nationwide Mut. Ins. Co. v. McAbee*, 58 N.C. 326, 328, 105 S.E.2d 496, 497 (1966).

6

B. Analysis

   1.   *"Insured"* under the Policy

Defendant here asserts that Marcus Holt was a resident, as defined in the Policy, of Lisa Frye's household at the time of the incident where Minor Defendant was injured, and that he was in the care of Lisa Frye so as to be "insured" under the Policy. The Court agrees.

      a.   *"Resident"*

It is clear under North Carolina law that a resident under an insurance policy need not be a member of the insured's family so as to be a covered insured. *See Jamestown Mut. Ins. Co. v. Nationwide Mut. Ins. Co.*, 266 N.C. 430, 146 S.E.2d 410 (1966). In *Jamestown*, the court defined a resident as "[o]ne who resides in a place; one who dwells in a place for a period of more or less duration." *Id.* at 438, 146 S.E.2d at 416. Residency thus is not defined or limited by one's familial relationship.

The evidence in this case, taken in the light most favorable to Defendant, shows that Holt was more than a boarder or short-term guest in Frye's home. He lived in the home, on a continuous basis, for up to four months before the incident involving minor Defendant. Indeed, the evidence shows that Holt had nowhere else to live, that he slept in Frye's home every night and that he intended to continue living there indefinitely. As such, the evidence establishes that Holt was a resident of Frye's household.

      b.   *"In the care of"*

Under the Policy, in order for a person under the age of 21 who is not the named insured or a relative of the named insured to be covered, he must be "in the care of" a

7

named insured. Under North Carolina law, the phrase "in the care of" embodies "much more than control or supervision and extends to the realities of providing life's basic necessities." *Nationwide Mut. Ins. Co. v. Anderson*, 118 N.C. App. 92, 94, 453 S.E.2d 542, 544 (1995). The court in *Anderson* found that the provision of life's necessities, such as food, clothing and shelter, is the determining factor to be considered in deciding if an individual is "in the care of" an insured for coverage purposes.

In this case, it is undisputed that Holt was living in Frye's home for a period of at least four months prior to September 29, 2008. Holt testified that he did not pay rent to Frye, did not pay for groceries, and did not contribute monetarily to the household. (*See* Holt May 9 dep. at 16, 20-21.) Like the plaintiff in *Anderson*, Holt was primarily dependent upon Frye to provide him with food and shelter. Frye herself testified that she knowingly provided life's basic necessities to Holt and did not ask for or require Holt to contribute to the household expenses. (Frye May 3 dep. at 18; 38-39.) As such, the court finds that Holt is an insured under the Policy.

2. Exclusions

Although this court has found that Holt was a covered insured under the Policy, the discussion does not end there. As asserted by Plaintiff, the court must next determine whether any of the exclusions contained in the Policy operate to bar coverage under the facts of this case.

a. Co-Insured Exclusion

The Co-Insured Exclusion in the Policy excludes coverage for bodily injury to an "insured." Plaintiff argues that if Holt is deemed to be an insured under the Policy, then

8

minor Defendant must also be deemed an insured, thus invoking the Co-Insured Exclusion. Having found that Holt is an "insured" because he was a "resident" of Frye's household, under the age of 21, and "in the care of" Frye, it necessarily follows that minor Defendant is also an insured under the Policy. The evidence in the record shows that Hooker and her minor son were living in Frye's home for at least a month and a half before September 29, 2008. Hooker and minor Defendant had no other place to live, and Frye testified that she provided food and other necessities for the child. (Frye Jan. 17, 2013 Dep. at 8, Pl.'s Br. Supp. Summ. J. Ex. J, Docket Entry 35-14.) Testimony in the record shows that the minor Defendant and his mother spent every night in Frye's home after they began staying there. (Holt Jan. 17 Dep at 22, Pl.'s Br. Ex. E, Docket Entry 35-7.) While the testimony also reveals that Frye often stayed at her boyfriend's home, this fact is irrelevant to the determination of whether minor Defendant was in the care of Frye. As with Holt, Frye clearly provided life's basic necessities to Hooker and minor Defendant. Thus, minor Defendant is an "insured" under the Policy and the Co-Insured Exclusion precludes coverage for his bodily injuries[3].

---

[3] Minor Defendant contends that the severability clause should apply to the household exclusion, thereby allowing each insured to be considered as separate policy holders. The severability clause contained in the Conditions section of the Policy reads:

B. Severability Of Insurance

This insurance applies separately to each insured. This condition will not increase our limit of liability for any one occurrence.

(Policy at K1, Docket Entry 1-3 at 8.) As minor Defendant points out, North Carolina appellate courts have not addressed the application of severability clauses in the context of household exclusions. Minor Defendant's reliance on caselaw from other jurisdictions is without merit as those cases involve co-insureds living in two completely separate households. *See State Farm Fire & Cas.*

b. Intended or Expected Injury Exclusion

As noted above, the Policy excludes coverage for bodily injury "which may reasonably be expected to result from the intentional acts or omissions . . . . of one or more insured persons . . . even if . . . [t]he bodily injury . . . is of a different kind, quality or degree than intended or reasonably expected." Plaintiff alleges that this intended or expected injury exclusion bars coverage in this matter. The Court agrees.

North Carolina courts have considered cases in which insurance policies excluded coverage for bodily injury that was "expected or intended" from the standpoint of the insured. In *Erie Ins. Exchg.*, the North Carolina Court of Appeals found that an eight year old child who held a lit match against a church choir robe should have "reasonably expected" a fire to result from such actions and that the intentional act exclusion of the insurance policy at issue barred coverage. 153 N.C. App. at 714-15, 570 S.E.2d at 767. In another case, the North Carolina Court of Appeals found that where an insured shot through the door and injured a suspected intruder, the action of the shooter was "sufficiently certain to cause injury that [he] should have expected such injury to occur," thus precluding coverage under the "expected or intended" exclusionary language in the liability policy at

---

*Ins. Co. v. Keegan*, 209 F.3d 767 (5th Cir. 2000); *Am. Nat. Fire Ins. Co. v. Estate of Fournelle*, 472 N.W.2d 292 (Minn. 1991).

As in *Estate of Bridges ex rel. Hunn v. North Carolina Farm Bureau Mut. Ins. Co., Inc.*, this Court declines to consider the effect of the severability clause where liability is barred on other grounds. 737 S.E.2d 191 (N.C. Ct. App. 2013) (unpublished decision). In that case, the Court found an exclusion provision of the policy to be "clear and unambiguous." *Id.* at *3. Thus, the plaintiff's argument that the severability clause would create separate policies for each insured was not addressed. *Id.* The Court finds in the present case that the policy language is clear and unambiguous. Moreover, since this Court concludes that liability is also barred on grounds other than the household exclusion, the Court finds the application of the severability clause to be ultimately nondispositive in nature in the present matter.

10

issue. *North Carolina Farm. Bur. Mut. Ins. Co. v. Allen*, 146 N.C. App. 539, 546, 553 S.E.2d 420, 424 (2001).

In the present case, Holt, a 19 year old man, admitted that he was aggravated with the two-year old child in his care and that he "threw" minor Defendant onto a wood frame loveseat, causing the child to land with a "thud" and bounce back. (Holt Dep. Jan. 17, 2013, Def.'s Br. Supp. Summ. J., Ex. B at 37-38, Docket Entry 33-2). In his statement given to police, Holt admitted that after minor Defendant began crying, Holt "walked into the kitchen to cool off." (Holt Jan. 17, 2013 Dep., Pl.'s Br. Supp. Summ. J., Ex. E at 41, Docket Entry 35-7.) The evidence in the record shows that minor Defendant suffered significant head injury and the treating physician stated in the medical record that "these injuries are very concerning for abusive head trauma given the subdural bleeding and significant cerebral edema with midline shift." (Report of Dr. Nakawaga, Pl.'s Mem. Supp. Summ. J., Ex. R, Docket Entry 35-22.)

An adult who, out of aggravation, intentionally throws a toddler onto a wooden frame couch with such force as to cause the injuries detailed in the record could reasonably foresee some harm to the child, even if the injuries were greater than he anticipated. Holt himself admitted under oath that he knew "there was a possibility" that his actions would hurt minor Defendant. (Holt Jan. 17, 2013 Dep at 39, Docket Entry 33-2.) This Court therefore finds that the intended or expected injury exclusion bars coverage for any liability on the part of Holt.[4]

---

[4] The primary case cited by Defendant on this issue, *North Carolina Farm Bureau Mut. Ins. Co. v. Stox*, 330 N.C. 697, 412 S.E.2d 318 (1992), is distinguishable both on the facts and the applicable policy language in that case. In *Stox*, the North Carolina Supreme Court held that an insurance policy's

11

c.  Physical Abuse Exclusion

Finally, Nationwide argues that the "physical abuse" exclusion in the Policy also operates to exclude coverage in this case. This Court is aware of no state court cases in North Carolina specifically addressing this "physical abuse" exclusion.[5] In a recent case in the Eastern District of North Carolina, the court found that a policy exclusion for sexual and/or physical abuse barred coverage for injuries suffered by an adopted child at the hands of his adoptive parents. *Scottsdale Ins. Co. v. Children's Home Society of North Carolina, Inc.*, No. 5:12-CV-81-FL, 2013 WL 3354506 (E.D.N.C. July 3, 2013). The policy in question in *Scottsdale* was a Commercial General Liability policy issued to the Children's Home Society of North Carolina, an entity which "assist[s] in the arrangement of adoptions in return for payments from the state and/or county departments of social services." The policy itself defined "sexual and/or physical abuse" as "sexual or physical injury or abuse including, but not limited to assault and battery, negligent or deliberate touching, corporal punishment, and mental abuse." *Id.* at *5. The minor child in *Scottsdale* died as a result of his injuries. The

---

exclusion provision for bodily injury "expected or intended" by the insured did not apply where the insured pushed a co-worker to the ground, breaking her arm. As noted by the North Carolina Court of Appeals in a later case, the insurer in *Stox* had not shown that the resulting injury was "substantially certain" to result from the insured's intentional act of pushing. *North Carolina Farm Bureau Mut. Ins. Co. v. Mizzell*, 138 N.C. App. 530, 533, 530 S.E.2d 93, 95 (2000). Here, where a 19 year-old man threw a toddler onto a loveseat out of aggravation, it was reasonably foreseeable that injury could occur. Moreover, the policy language in *Stox* was different from that in this case, where the policy excludes coverage for injury or damage "which may reasonably be expected to result from the intentional act." As noted by the court in *Mizzell*, "this language now suggests the application of an objective standard as opposed to the subjective language involved in previous policy interpretations." *Id.*

[5] There are, however, several cases interpreting the exclusion for bodily injury arising out of sexual molestation. *See, e.g., Allstate Ins. Co. v. Bates*, 185 F. Supp. 2d 607 (E.D.N.C. 2000) (court finds no coverage based on explicit provisions stating that coverage does not apply to injuries occurring as a result of sexual molestation by the insured); *Erie Ins. Exchg. v. First United Methodist Church*, 690 F. Supp. 2d 410 (W.D.N.C. 2010) (finding that sexual molestation exclusion applied to bar coverage for alleged abuse of children at insured's preschool by another child at the preschool).

12

court in *Scottsdale* found that the horrific acts alleged in the underlying tort complaint were "clearly acts of physical abuse." *Id.* at *6.

In a similar case, a South Carolina court has held that injuries from shaken baby syndrome constituted "abuse" within the meaning of a policy exclusion. In so finding, that court referred to dictionary definitions of abuse: "a departure from legal or reasonable use in dealing with (a person or thing); to misuse . . . To injure (a person) physically or mentally." *South Carolina Farm Bureau Mut. Ins. Co. v. Oates*, 356 S.C. 378, 383, 588 S.E.2d 643, 646 (Ct. App. 2003) (citing *Black's Law Dictionary* 8 (7th ed. 2000).

Here, the term "physical abuse" is not specifically defined in the policy. However, giving the term its normal everyday meaning, as this court must, it is clear that the physical abuse exclusion applies. *See Grant*, 295 N.C. at 42, 243 S.E.2d at 897 (terms not defined in policy must be given same meaning they generally receive in ordinary speech). The Court finds that Holt's conduct in throwing minor Defendant, a toddler who was totally helpless and dependent upon Holt for his care and safety, against a wooden frame loveseat was, quite simply, conduct which is not acceptable or reasonable in society. As such, Holt's actions constitute "physical abuse" so as to bar coverage under the Policy.

## IV. CONCLUSION

For the foregoing reasons, this Court finds that Plaintiff has no duty or obligation to provide any benefits, coverage or defense pursuant to Policy No. 61 32 HO 510722 for any injuries sustained by minor Defendant on September 29, 2008. Accordingly, the Court **RECOMMENDS** that Plaintiff's motion for summary judgment (Docket Entry 34) be

**GRANTED** and that Defendant's motion for summary judgment (Docket Entry 32) be **DENIED**.

_____
Joe L. Webster
United States Magistrate Judge

December 2, 2013
Durham, North Carolina